At this time we'll hear Excelled Sheepskin vs. Argonne Brewing. Good morning, Your Honors. I'm John Dabney from McDermott Woolen Emory on behalf of the Appellant Argonne Brewing Company today. As we explained in our briefs, the district court made several fundamental errors in this case. First, with respect to OBC's counterclaims, the district court never really considered OBC's trademark counterclaims. OBC's trademark counterclaims arose from the contention that starting in 2009, Excelled Expanded from selling jackets and coats into selling t-shirts and sweatshirts and hats. And that by doing that in 2009, that infringed OBC's trademark in rogue for t-shirts, sweatshirts that dated back to 1989. Now the district court properly found that OBC, this was on summary judgment, undisputed, found that OBC was the prior user of the trademark rogue on t-shirts sold throughout the United States. That it had sold those t-shirts continuously since 1989 in a wide variety of different websites. Its own websites. I mean, Excelled did not start selling t-shirts with rogue until 2009. That's correct, Your Honor. It expanded from jackets into, which we did not believe and the parties agreed there was not a likelihood of confusion on, into selling t-shirts in 2009. And also, those t-shirts, and there was evidence of this in the record, had rogue on the outside of them, unlike the jackets, the high-end leather jackets, which had rogue, you know, almost always on the inside of the leather jackets. And these t-shirts and sweatshirts that they started selling in 2009 were also directly, were sold to OBC's same customers. We had that in expert testimony, and that is younger male customers. So the district court, and Excelled doesn't challenge us on appeal. The district court correctly found that OBC had prior nationwide use of rogue on t-shirts slash sweatshirts in this wide variety of retail channels. But then, the district court found, and this is where we see most clear error, that OBC's finding, OBC, or Excelled was the first party to use the rogue trademark on clothing, in clothing and department stores, okay? Clothing and, that, that ruling is wrong, clearly erroneous and wrong legally for at least two reasons. First of all, there's no evidence in the record of what, of defining what a clothing and department store is. Their own expert, defendants, I mean, Excelled's own expert could not define what a clothing store was. And even with respect to department stores, below in the summary judgment papers, Excelled argued that if a, if a business sells beer, that is not a department store, okay? But then on appeal, in this, in its brief here, it said that Target and Walmart, which sell beer, include Target sells my client's beer, are department stores. So there's absolutely no evidence in the record. Even if there were, is there any justification in the trademark law for saying that one's priority in a trademark doesn't apply if one has been, one has exercised the prior trademark. That's exactly right. Through a certain type of merchant, through a certain type of merchant, but not through another type of merchant. You're exactly right. That's the second point. You never sold them at golf clubs. Precisely. That doesn't give your, your adversary who is junior, the right to, um, to become prior by starting to sell before you in golf clubs. That's precisely right, your honor. So he, the district court seemed to think that simply because they, they sold first in this clothing and department store channel, which we don't think there's any evidence in the record as to what that is. Even if that's true, it's irrelevant because it doesn't, that doesn't mean that OBC's trademark is, is invalid at all. That doesn't, if it causes a likelihood . . . I don't know why it's invalid. It would go to the likelihood of confusion. Right. Exactly. And our claim, which district court never reached because it found the mark was quote unquote invalid, was that they had caused a likelihood of confusion in 2009 with our trademark, in our channels of trade, when they expanded from jackets to, uh, t-shirts, sweatshirts, and hats. Let me, let me suggest to you another way that the district court seemed to distinguish the products here that may pertain more to the, your adversary's claim than to your counterclaim, but I still think they're interrelated. The district court appeared to think that you used the, um, rogue name on clothing only to promote your beer product. In other words, you weren't in the clothing market per se, you were in the beer market and as part of promoting beer, whether you, you know, advertised on magazines or whatever, you advertised by having certain promotional clothing items and that you weren't really a player in the clothing market. Why don't you tell me why you think that way of looking at that, at this, um, is not warranted? Well, I, I mean, first of all, all of our clothing that we sell that has rogue on it is meant to promote our brewery business and the mere fact that that's what we intend to do with it does not somehow limit our trademark rights in any way. They, the suggestion is that, um, and I'm not saying that the court would so find, but the suggestion is that, um, they were using it in a clothing market that was unrelated to the promotion of beer and that somehow they were permitted to do that, that your promotion area, tell, tell me why you wouldn't agree with that. Absolutely. Well, the reason why that's wrong is there's undisputed, there's evidence in the record that shows that when they expanded, the parties agreed there was no likelihood of confusion if we sold on t-shirts and they sold on jackets, okay, they were selling on high end leather jackets, that there was no likelihood of confusion. When they sold into t-shirts, we have evidence from our expert, which a district court never considered, that those t-shirts were being marketed in Nordstrom's to our, to younger male consumers of, who is also our target audience and that our target audience was going into Nordstrom's and thus becoming into contact. It's a phenomenon, uh, recognized in the law and the trademark cases, several that we cited from the district court, known as cross shopping, in other words, the people who were going into the retail stores and seeing our product were also going into Nordstrom's when they started selling t-shirts and seeing their product and it caused a likelihood of confusion. But I wasn't being clear, I thought the district court thought that when you sold your t-shirts, your ultimate goal was to get consumers to buy your beer. When they were selling t-shirts or jackets or whatever, they, their goal was to get consumers to buy clothing. I, I think . . . And that's why, I mean, the court speaks about it as channels of commerce, but I'm wondering whether it's really different markets that the court thought you all were, um, acting in. I, I, if it made that finding, and I don't know what it did, I don't think it's clear, it is, that is completely a distinction without a difference. I mean, for example, I mean, McDonald's sells, I'm sure there's McDonald's t-shirts and hats and stuff like that, and items like that. I mean, the fact that McDonald's isn't in the clothing market, so to speak, doesn't mean that someone else, Excel or anyone else, or OBC could start selling, start selling, you know, as a clothing line, McDonald's. It has no, there's no basis in the trademark law. When your t-shirts are sold in these big stores, uh, are they sold next to the beer, next to your beer, or are they sold where t-shirts are sold in the . . . Uh, I . . . If someone walks into a store and says, and says, I'm looking for t-shirts, where do I find t-shirts? Are they going to find your t-shirts where they're sent to look at t-shirts, or do they have to, will they find them only if they, if they ask for, where do I go to find beer? I'm not sure, uh, there's evidence on the, in the record of that, but, uh, we would submit that, that it's, that there is no evidence in the record of that, but we'd submit it's still not relevant to our claim of whether, when they expanded into t-shirts, they infringed our trademark law. Again, the district court never considered that issue. You had sold, you were selling close to three quarters of a million dollars, um, in t-shirts. Yes. 2010, there or 20 . . . I mean, and throughout the United States, and the district court just, and then the other error that the district court made on our counterclaims is that it said, well, even if you do have rights in, in, uh, clothing and department stores, again, a term that I, is never defined, no evidence on, that we somehow delay, we somehow lost those rights. We quote unquote forfeited those rights because we didn't object, uh, in 2005 when we first found out, but the evidence is undisputed. We did object in 2005, I believe. Even if you did, I mean, uh, at a certain point, uh, in the district court, uh, you conceded that, uh, Excelled has the right to sell at least coats and jackets in department stores. That's right, Your Honor. That would seem to mean that they have some protected rights and, uh, all they need to show then is likelihood of confusion, which doesn't seem to be disputed. You're right. No, it is, Your Honor. Your Honor. We are not, our counterclaims . . . Likelihood of confusion is disputed? You just said . . . It's likelihood of confusion is disputed. We don't think, and there was actually a settlement agreement in place, that there is no likelihood of confusion between our use on t-shirts and their use on jackets and coats. Those agreements are routinely upheld, including by this court in the arrow fastener case, which we cited. It was just a settlement in any event? It was a settlement, and we said that there was no . . . We agreed, the parties agreed that there was no likelihood of confusion. We'll stay in t-shirts . . . Is that a stipulation here, or is this the contract that blew up? This is the contract that was ultimately, um, that was ultimately terminated, but that was the agreement. That's evidence that there is no likelihood of confusion. And, and so . . . But again, with respect to our counterclaims, the district court never considered our argument on t-shirts and sweatshirts. We're not trying to enjoin them. Let me make this crystal clear. We're not trying to enjoin them from selling jackets, coats, and skirts. We're not trying to do that. We're simply saying when they expanded into doing what we're doing in 2009, that's the same thing we've . . . the identical goods we've been selling throughout the nation since, since 1989, and, and that caused the likelihood of confusion. The district court simply held our mark was invalid because they used it in a certain, this alleged trade channel before we did. But that's clearly erroneous as a matter of law because, uh, as Judge LaValle said, just because they might have used it in a certain trade channel does not somehow wipe out or make our trademark invalid at all. You've received some rebuttal. I'll give you an answer. Thank you. Good morning, Your Honor. Your Honors. Michael Groh, Errant Fox for the Appellee Excelled Chiefsgain. I would take issue with everything that my worthy colleague has said. Judge Daniels looked at their counterclaims with great care. He looked at the issue of priority with great care, and he correctly observed that the question of first use is not dispositive in this case. Trademark rights are not granted in gross. The owner of a trademark has the right to prevent other people from making confusingly similar uses of similar marks. But Oregon Brewing admitted to the Patent and Trademark Office in 2007 that it was only selling in a limited trade channel. It was not in big retail stores. It sold its products primarily in its own brew pubs and its own website to complement and promote its brewing and beverage business. The allegation that Judge Daniels didn't consider their counterclaims is completely false. He found that there was no genuine issue of fact as to who had prior rights in the clothing channels. Our client is a clothing business. It's been in a clothing business since 1927. They're a beer business. You haven't been in the business of selling rogue clothing since 2000. Until 2000, which is about 10 or 11 years afterward, and t-shirts didn't come until 2009. But, Your Honor, the point is, and this is what the Patent and Trademark Office recognized, is if you've got rights in clothing, somebody else can't come in to your market and start selling a different type of clothing. That's going to cause a likelihood of confusion. That's what the Patent and Trademark Office told them when they tried to register their mark for clothing without a limitation. But that seems to me to say that you had no right to start selling any clothing at all when you, when they already had rights in clothing, and you started selling your jacket. They're not asking that you not sell your jackets and skirts or whatever it is, but you came into clothing after they did, 11 years after they did. Your Honor, they were merely selling clothing in a different market. That market, by their own admission, was separate and distinct from the market in which our client was operating. We obtained a, we filed our application in 2000. We've been on the public record as owning registrations for rogue in unlimited trade channels since that time. I'm confused about this argument, because what they were selling was clothing. They were selling it for promotional purposes, to promote their beer, and they were selling it usually in stores that also sold their beer. But having put their mark on clothing, the natural assumption would be that if this became a very popular item of clothing, that they would start selling it in more and more outlets. So I'm not sure why they don't have the priority right to use rogue for clothing. They don't have it, Your Honor, because they only sold it in a limited market until- That would be the natural expansion, and they held the right to that. But as Judge Daniels held, they didn't have the right to expand into a market that we had already developed. He didn't invalidate their mark. He merely held them to the representation they made to the trademark office, that their rights were limited to a narrow market, to a narrow channel of trade. Whether you were entitled to go into that separate area, what would have been the expansion market that would have been the natural expansion for them. Isn't that the first question that has to be addressed? That's not correct, Your Honor, because we began selling in 2000. That was 17 years ago. We established rights in that market 17 years ago. We built an awareness of our mark in that market over this great period of time. And they never made any attempt to go into that market. Today, the public sees rogue in a clothing store or a department store. They think of us, not them. They're a small craft brewer. They are not seeking, as I understand it, they are not seeking to stop you from selling the jackets and the skirts, or whatever, that you've been selling starting in 2000 in department stores and other high-end outlets. That's not what their complaint said, Your Honor. But the main point of this, and this has been overlooked- No, I mean, I heard them today, and they're pretty well stuck with what they say here, aren't they? That's their position, you can go on. That's their position, but Judge Daniels found that we established rights in the clothing and department store market before we did, before they did. This whole thing about us expanding into t-shirts is a sham. In this special, in this written, in this- Did you sell t-shirts with rogue before 2009? We sold other shirts, and I- You sold t-shirts. But I respectfully submit to you, Your Honor, that is not a valid distinction. We established rights in shirts. In this settlement agreement, which you can find in the appendix at 193, they specifically agreed in paragraph 2.1, OBC hereby consents to the use of rogue for clothing in the US by Excel, but limited to jackets, coats, shirts, and skirts. Isn't there a rule that forbids what you're doing right now? Isn't there a rule that forbids using a party's settlement terms against them on the merits of the issue? Well, Your Honor, this is a completed agreement. It's not negotiations. This is an agreement that they relied on in their arguments. They're telling the court today that we somehow violated their rights by expanding to t-shirts in 2009 when, in fact, in 2007, they said, you're free to use shirts. We don't care. T-shirts? Didn't they say that? Without limitation. Shirts, it doesn't say you can't use t-shirts. It doesn't say your shirts have to be leather. They consented to shirts. And the reason they did this is because they were in a different market. They weren't trying to sell rogue clothing in the general clothing market. They were only interested in selling it on their beer. The PTO told them that if they went into our markets, there would be confusion. That's why they amended their trademark registration to include that limitation. Common law rights in a market, which is what we're talking about, end at the border of likelihood of confusion. The mere fact that they were the first to use a mark on shirts in a limited market segment doesn't give them rights everywhere. Their rights ended where the likelihood of confusion lines stood. And in 2007- Likelihood of confusion when two people are selling two t-shirts that say rogue? There's no likelihood of confusion? Well, of course there is, Your Honor. But who has the prior rights, as Judge Daniels correctly found? I thought it was the one who started first. That isn't the issue, Your Honor. It isn't who started first. Who started in the clothing industry first? That's the issue. They recognized that we had priority in that channel in 2007, when they amended their application. They told the PTO there would be no confusion between us and them because they were in a narrow trade channel. Judge Daniels didn't take away any rights from them. He merely restricted them to the rights they defined for themselves in 2007. And now, what they're trying to do is they want to come into a market that Excelled has developed, where they don't know anything about rogue beer. They only see a line of clothing- Do you have any court of appeals or proposition that one who has priority selling an item in commerce, but selling it in a particular type of store, loses that priority and cannot exercise it against someone else who sells exactly the same item, but in different stores? Well, yes. Is there any case that holds that? Yes, we've cited several cases in our brief. Which ones hold that? We cited the Sarah Lee case. We cited the case with Cracker Barrel and Kraft. Kraft sells Cracker Barrel cheese. Cracker Barrel restaurants sell cheese in their restaurants. When they tried to expand into the market that Kraft already occupied, the court found there would be confusion. It's black letter law that rights in a mark are limited to particular lines of business. Their line of business is beer. Our line of business is clothing. I'm not sure I understand this. I mean, Harley Davidson's line of business was motorcycles, but they went into a clothing line. I presume they started selling them in garages. But now they're probably selling more clothes than they're selling motorcycles, and they're happy about that. Why can't these people ride some wave of popularity for their beer and have people think it's cool to wear this and buy it wherever they like? Because Excel established rights in a clothing store market first. They waited 12 years to object. We have incontestable registrations. They're not- You weren't selling t-shirts though, and I want to take you back to your representation to us that the agreement had your adversary agreeing to your selling shirts. I'm looking at A175, the consent to registration. And if I'm reading it correctly, it consents to your selling jackets, coats, and skirts, S-K-I-R-T-S. Am I overlooking where they consented to your selling shirts, S-H-I-R-T-S? That agreement only related to registration. Well, you told us that there was a settlement. This agreement relates to use. There's two agreements. What are you referring to then? I'm referring to the settlement agreement, which was executed at the same time. You're looking at A192 and A193. The agreement you're looking at referred only to registration. That agreement was done to help them get a registration. I understand it. That agreement required your client to make a certain filing. And your client declined to do it, just said, we're not going to do it. And then the innocent party terminated the contract. So I'm not sure what force this has. Your Honor, what was the provision? You say A192? Yes, if you could tell me where in the settlement agreement you say they consented to your selling shirts without qualification. Paragraph 2.1, it's on page A193 of the appendix. All right, that does reference shirts. But the previous paragraph on page A192 says that the shirts you deal in are sweatshirts. I'm not seeing that, Your Honor. Trice letter, Roman C, or letter C, rather, on page A192. That's talking about the fact that Excel obtained by assignment from another company a trademark application for footwear and clothing, and the clothing- Sweatshirts. Right, but that was another mark, that was another application that was assigned to Excel. Why what you're saying makes no sense to me is that this suggests that if your argument is such, you had the right to sell shirts anywhere you wanted. And the patent office quite clearly understood that that was not going to be the case. No, no, Your Honor. The patent office recognized that our client, as the prior filer, had an unlimited right. These people, as the second comer, coming in five years after we had already applied, and after we had already obtained registrations, they were trying to register the same mark rogue for shirts that we had already registered. A trademark registration gives you prima facie rights. The patent and trademark office said, look, if you go into a store and you see somebody selling shirts with a collar, and somebody selling shirts without a collar, like a t-shirt, that's going to cause confusion. Excel had established a prior right by being the first to file. If Oregon Brewing had a problem with- That's not a registered trademark. That doesn't deal with what their common law claimed. Well, again, Your Honor, common law rights end at the likelihood of confusion boundary. They agreed then that that boundary didn't extend to what Excel was trying to register. They agreed that Excel could use shirts, and they didn't object. And when the PTO told them that an agreement that merely divides up clothing products between two separate parties isn't enough to avoid confusion, they agreed. They recognized that they didn't have common law rights that extended into our trade channels at that time, that their rights were only limited to the ones in which they were selling the product. And, you know, it may be that there are some people who are familiar with their beer who recognized Rogue as a trademark for products that promote beer. But promotional products are an entirely different category than what you find in a clothing store. People go to clothing stores to find products that they can wear in public. And our client has, for years, sold a whole line of these products. They've sold jackets, coats, shirts from day one. And for them to say that merely because we expanded our product line from normal shirts to T-shirts that that somehow caused confusion, that's wholly unsupported by the law. There's no case law to support that. Thank you. Thank you. Well, here we're back. Several things, Your Honors. First of all, the cases that my friend cited with respect to claiming that it's the trademark laws, it's the first to use in a specific channel of trade, that that governs as opposed to the first to use in commerce. That's just not the law. There is no case that holds that. And the cases they cite, Sarah . . . First to use in a particular channel. Yeah, in a particular channel. First to use in commerce. Right. First to use in commerce controls. We were the first to use in commerce by over a decade, by more than two decades. What right did they . . . What did it get them to be the first to register? It got them nothing. And in fact, Your Honor, as we cited in our brief, the fact that in the United States, trademark rights arise . . . This is from Supreme Court cases going back over 100 years. Trademark rights arise from the first use of the mark in commerce on the goods. The district court here felt it was undisputed. We were the first user of the mark on T-shirts throughout the United States by two decades. And yet the district court then enjoined us as a senior user from selling the exact same T-shirt we had been selling for over 20 years and said by doing that, that we had willfully infringed and awarded attorney's fees for it. Now, the cases they cite, I just want to make this really clear. Look at those cases at Sara Lee, Kraft, and Gallo. In each one of those cases, the plaintiff was the senior user in commerce. The plaintiff successfully sought an injunction against the defendant in each one of those cases based in a narrow trade channel. And the court held for the plaintiff in those cases. Those cases have nothing to do about prior use, the prior user defense. You know, those cases don't even say, the defendant in those cases didn't even argue prior . . . You're saying the cases have nothing to do with what? The prior user defense or how you establish trademark rights. Are you saying that in all of those cases, the prevailing party was the prior user, the first user? The prevailing party was the first user. And this is another, I didn't have a chance to say this in the opening part, but I mean, what's really stunning is that not only did the district court grant them summary judgment on our counterclaims, the district court granted them summary judgment on their trademark claims against us. For selling t-shirts, the same t-shirts, the exact same t-shirts, we've been selling since 1989 continuously. He said by us selling those in Nordstrom's, $5,000 worth in Nordstrom's, that we willfully violated their trademark. But why can't they rely in that case, and why can't the district court rely in that case, the claim itself on Oregon's concession that Excelled has protected rights in selling coats and jackets in department stores. That means they have protected rights. Now you're arguing, they only have protected rights in certain channels of commerce. No, that's not what I'm arguing, Your Honor. What we're- If they have protected rights in all the channels of commerce, then you lose, right? I don't think that's correct, Your Honor. Again, we're focusing on the goods. That's what we need to focus on here, the goods, not the channels of trade. We're saying, and they agreed, that there is no likelihood of confusion when we use the mark on t-shirts and they use the mark on jackets. That is a concession, and in any event, how can you argue that? If in Nordstrom, jackets and coats or skirts or whatever are sold bearing the label Rogue or the name Rogue. And two departments over, t-shirts are sold bearing the name Rogue. Isn't there going to be a likelihood of confusion as to origin? I don't think, Your Honor, we didn't think so. The parties entered into a- It's the consumers that have to think. So let me ask you, when you sell them in Nordstrom, is the association you want consumers to have your beer product? Yes, Your Honor. Well, is this case not something that can be resolved by you're selling your t-shirts with an allusion to your beer on yours? We thought so, but that apparently, well, that gets into another issue. But again- What does your mark say? What does your mark say? Rogue, and it says Rogue and a star, which has been used since 1989. Well, but in some of these trademark cases, they're compromised, which you don't want to put the word beer on your mark? Most of the time, it does have a reference to beer, almost all the time. I don't have it, the record, but almost all the time, it does. But Your Honor, the district court, we've proved that we satisfied each of the elements of the prior user defense. And that's under WATEC, and that's under the SC Johnson case in Section 1115 of the Lanham Act. The district court rejected that and said, well, because you did have rights in all these trade channels, but then there's this other trade channel that's undefined that you went into. That somehow means that you don't get the benefit of the prior user defense. There's not one case, Your Honors, if you look at both. The district court's opinion, this is very important, the district court's opinion and the cases they cited, this is Gallo, Kraft, and Sara Lee. None of those cases are prior user cases. There is no case other than this case, Judge Daniels, where the senior user of a trademark on the goods that he found himself nationwide on t-shirts is enjoined by the junior user on the same goods. What was the scope of the injunction? Again. In this case? So the scope of the injunction in this case, which also raises several, which we've appealed, is that we're prohibited from selling in clothing and department stores. Again, totally undefined. It's vague and ambiguous. It's irrelevant, as Your Honor noted. Their expert can't define what a clothing store is. There's no- There's not a lot of stores that sell both clothing and beer. Exactly. Exactly, Your Honor. And actually, this is what's really amazing, is that below in the summary judgment, they took the position that, well, if a store sells beer, that means it's not a department store. That's what they said in the summary judgment. What is the impact, if any, of the injunction on online sales? Well, that's the other thing. I mean, they're saying- What's the answer? We can't sell online, other than in our own website, which we've been selling products on that since 1995 or something. You can't sell through Amazon? Correct, because that doesn't also sell beer. So it doesn't make this distinction, clothing and department stores. Amazon has just bought Whole Foods, so they may get in the beer business. Exactly. I mean, this all breaks down. There is no basis for clothing and department stores. There is no basis in the record, and there's no basis in the law. Right, but whether or not this record divides it or not, Nordstrom's doesn't sell beer. So the point, though, is that you don't want them selling any T-shirts, whether referencing beer or not. Is that right? That's correct, Your Honor. But if they have a mark that has been developed for jackets and skirts and all that, you're saying they are absolutely precluded from the T-shirt market, even though you're only selling your T-shirts so that consumers will associate it with your beer product? Yes, it's our contention, and the district court never reached this issue because he found our mark, quote-unquote, invalid, okay? The district court never reached the likelihood of confusion issue on our counterclaims. And our counterclaims, again, we're not trying to stop them from selling jackets, coats, or skirts. We're simply saying when they expanded into selling T-shirts, sweatshirts, the same things we have been selling throughout the country since 1989, that's when it caused the likelihood of confusion, even if we're not in Nordstrom's, even if we're all these places which the district court found we were in in 2009. We're saying when it did that, that caused the likelihood of confusion. The district court never reached that issue because it said our mark is invalid based on this clearly erroneous view of the law on trade channels. Seems to be pretty inescapable that if you have T-shirts, if you have two different T-shirts being sold with Rogue as the trademark on them, that's going to cause confusion. I would think so, in my opinion. . . comes to the store and say, where do I find Rogue T-shirts? Right. But again, Your Honor, the district court never reached that issue. And the other thing, and I appreciate you indulging me on this, but this is really important. The district court found that my client, by selling $5,000 worth of Rogue T-shirts, the same T-shirts that have been selling continuously throughout the United States since 1989, by selling $5,000 worth of those T-shirts in Nordstrom's, that it committed willful trademark infringement and it awarded attorney's fees against my client. Not only did it enjoy my client, it awarded attorney's fees. They're trying to get $1.6 million from my client just because we did that. There's no evidence of willfulness. We never told the PTO we can't sell T-shirts in clothing stores or department stores. We never said they can sell T-shirts in clothing or department stores. We have the briefing on that, actually, on both sides. Okay. Thank you. Thank you very much. We will reserve decision.